STATE EX REL. HERBERT W. BALLARD *v.* SELDEN C. GREENE.

November Term, 1913.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed February 16, 1914.

*Election of Municipal Officers—Candidate Presiding—Effect —Canvass of Votes—Recount—Contests—Petition—Sufficiency.*

Under a city charter providing that the mayor shall preside at all meetings of the city, with the power of moderator in town meeting, and that, in his absence, the president of the board of aldermen shall act in his stead, it was not illegal for the mayor to preside at a city election at which he was a candidate for re-election, where as presiding officer he merely declared the result of the vote as handed him by the authority appointed by the charter to make the count.

In the absence of any governing provision in the charter or in the general law, the refusal of the presiding officer at a city election to order a recount, merely because the vote was close and was declared to result in the election of himself as mayor, is not a sufficient basis for ·a complaint seeking a *quo warranto* assailing his title to that office.

Under a city charter, dividing the city into six wards, each represented in the city council by an alderman, requiring the city council at city elections to provide as many sets of ballot boxes as there are wards, and to appoint two ballot clerks for each ward to act with the board of civil authority in canvassing and counting the votes, a complaint seeking a *quo warranto*, alleging that the ballots were counted by one person calling off the name of the candidate voted for, and another making a mark on a tally sheet, and that this was done on several sheets by as many as 15 or 20 counters in different parts of the room, did not show that more took part in the counting than were officially connected with the work, or that the counting by the different groups in different parts of the room was not such as the charter contemplated.

Allegations of a complaint seeking a *quo warranto* that the ballots in question were hastily, carelessly, and inaccurately counted, in a

haphazard and unskilful manner, by persons of little or no experience; that the marks on the tally sheets were counted up hastily, and that several tally sheet footings were added together and passed to the presiding officer without checking or revising the totals, do not justify a recount, as they show only a possibility of error in the count.

COMPLAINT seeking a *quo warranto*, brought to the Supreme Court for Franklin County at its May Term, 1913, and then heard on demurrer to the complaint. That demurrer was sustained, as reported, *ante*, page 94. Thereupon relator amended his complaint. Heard on demurrer to the amended complaint at the November Term, 1913. The opinion states the case.

*H. P. Dee* and *M. H. Alexander* for the relator.

*C. G. Austin & Sons* for the respondent.

MUNSON, J. The original complaint in this case was held insufficient on demurrer, and the case remanded. 87 Vt. 94, 88 Atl. 515. It is now here on an amended complaint, which is also demurred to.

The relator and the respondent were opposing candidates for the office of mayor of St. Albans for the term of one year from the first Tuesday of March, 1913. The respondent was the mayor of the previous term, and presided at the election by virtue of his office, in accordance with the provisions of the charter. The result of the ballot as reported by the board of civil authority and declared by the presiding officer gave the election to the respondent by a majority of two. As soon as the vote was declared the relator and others called for a recount, which the presiding officer refused. At the request of the relator the ballots were then and there sealed up and placed in the custody of the city clerk; and they are now in the city clerk's office, ready to be opened and recounted if the Court so orders. The complaint asserts that it will appear from an examination and counting of these ballots that the relator was legally elected mayor, and that the respondent is exercising the privileges of the office without right.

The relator claims that the action of the respondent in presiding at the meeting, receiving the returns, and declaring

himself elected, was a violation of the rules and precedents governing the conduct of such meetings which debarred him from claiming the office. The charter provides that "the mayor shall preside at all meetings of the city, with the power of moderator in town meetings;" and there is a general provision that "in his absence, the president of the board of aldermen shall act as mayor in his stead." We think the respondent was not required to absent himself because of his candidacy. As presiding officer, he merely declared the result of the balloting as handed to him by the authority appointed by the charter to make the count. This was a mere ministerial act.

The relator claims further that in the circumstances the demand for a recount should have been granted by the presiding officer as of right. There is no provision of the charter, or applicable provision of the general law, regulating the matter of recounts. It does not appear that any circumstance connected with the counting was given as a reason for desiring a recount. Presumably, the demand was made because of the closeness of the vote. If it were conceded to be within the discretion of the presiding officer to order a recount, his refusal to order it would not be a sufficient basis for the application made here.

The relator does not claim that there is any law providing for a preservation of the ballots and a recount, but he contends that, inasmuch as the ballots have been sealed up and kept in official custody, the court can grant the relief in the exercise of its common law jurisdiction. We will assume for the purposes of the discussion that this is so, and turn again to the amended complaint for a further statement of the case.

It is alleged that after the ballot boxes were closed and the ballots taken therefrom, such ballots were hastily, carelessly and inaccurately counted, in a haphazard and unskilful manner, in many instances by persons of little or no experience, one calling off from the ballot the name of the candidate voted for, and another making a mark on a tally sheet containing the names of many candidates, supposedly against the name called off; the same being done on several sheets, by as many as fifteen or twenty counters in different parts of the room; the marks being afterwards counted up hastily, and the several tally sheet footings added together and passed to the presiding officer without checking or revising the totals.

The city is divided into six wards, and each ward is represented in the city council by one alderman. The charter provides that the city council shall place in the building where the meeting for the election of city officers is to be held, as many sets of ballot boxes as there are wards, for receiving votes for all the officers to be elected. The city council is also to appoint two ballot clerks for each ward, and these are to act with the board of civil authority in canvassing and counting the votes. The board of civil authority consists of the city council, city clerk, and justices of the peace residing in the city. So it appears that the number alleged to have taken part in counting these votes was no more than were officially connected with the work, and that the circumstances in which the counting was being done, by different groups in different parts of the same room, were such as the charter contemplated.

The allegation of the amended complaint, fully set forth above, amounts to no more than saying that the business was so done that errors might easily have been made. It is manifestly based upon the possibilities which always exist in connection with the making up of returns under these conditions. There is nothing here that points to any specific thing as productive of an erroneous result. If this were sufficient, the Court could be called upon to order a recount in every election had under this or a similar charter, where the vote was close enough to invite inspection. General allegations of this character could be made in the case of every such election. It is evident that something more specific must be had to justify the use of this extraordinary remedy. All reasonable presumptions are to be made in favor of the correctness of the work of official canvassers. A general allegation that errors are believed to exist is not enough to sustain an application for a recount.

*Petition dismissed with costs.*